IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANDREW JON THOMASBERG,<br><br>Defendant. | Case No. 1:19-cr-337<br><br>The Honorable Liam O'Grady |

**GOVERNMENT'S OPPOSITION TO**
**MOTION TO MODIFY SENTENCE**

The United States of America, through undersigned counsel, files this Opposition to the Motion to Modify the Sentence imposed by this Court. The government does not believe the defendant is safer and better protected from the virus in McLean, Virginia (his residence as reported in the PSR) than he is currently in an enforced lock down in Cumberland, Maryland. Further, this defendant has a disturbing history of violence and hate. His residence was literally filed with weapons when searched by law enforcement (most of which were returned to his family after sentencing) and no one at his residence was able to protect the public from him while he was using narcotics, purchasing weapons and espousing hate on the internet. His PSR also noted a number of mental health concerns and noncompliance with taking medications prescribed to him. It is also important to recognize that U.S. Probation is working under very difficult circumstances given the current public health emergency imposing difficult conditions for them to supervise individuals released into the community. For these reasons, the government respectfully submits this Court should deny the instant motion subject to being refiled if and when the BOP facility in Cumberland, Maryland is unable to protect the defendant from COVID-19. The government submits a hearing is unnecessary under the current public health emergency here in Northern Virginia.

1. The defendant, Andrew Jon Thomasberg, is today 21 years old. He is serving his sentence at FCI Cumberland, located in Cumberland, Maryland, a Bureau of Prisons medium security facility that has no reported cases of the COVID-19 virus. In fact, the entire county where the facility is located has only today experienced two positive tests for COVID-19, both individuals having recently traveled into the county from elsewhere. "CUMBERLAND — After being the last jurisdiction in Maryland to report a confirmed case of COVID-19, the Allegany County Health Department on Wednesday announced positive test results in two residents." Teresa McMinn, Cumberland Times-News, April 1, 2020 at https://www.times-news.com/coronavirus/second-allegany-county-resident-tests-positive-for-covid-19/article_9c3970c0-7420-11ea-8b8d-93aef4ff85bb.html.

2. In sharp contrast, the defendant's residence in McLean, Virginia, is unfortunately in a county already suffering from this virus. Just today, April 1, 2020, the day the defense filed their motion, Fairfax County is reporting 43 new cases, for a total of 288 confirmed COVID-19 cases. Tragically, there have been five fatalities in the county already from the virus, three reported just today, April 1, 2020. Fairfax County website at https://www.fairfaxcounty.gov/health/additional-covid19-deaths. Fairfax County Health Department online coronavirus update at https://www.fairfaxcounty.gov/covid19/.

3. Further, BOP Cumberland has closed its facility to the public. https://www.bop.gov/locations/institutions/cum/. So not only are there no COVID-19 cases, but there is a fair chance that now that the facility is closed to the public it is reasonably protected from the introduction of this virus into the population.

4. Yesterday, March 31, 2020, BOP announced that it was placing all facilities on a fourteen-day quarantine, effectively locking down the entire inmate population.

https://www.npr.org/sections/coronavirus-live-updates/2020/03/31/824917318/prisoners-across-country-will-be-confined-for-14-days-to-cut-coronavirus-spread.

5. Accordingly, there is simply no basis upon which to believe that the defendant is safer removed from his present location. In fact, it is reasonable to believe he is safer from COVID-19 in rural Cumberland, Maryland, in a mandatory, enforced lock down as opposed to being moved between states and housed in the community in a suburb of a major metropolitan city. This fundamental fact is omitted from defendant's motion.[1] Even movement between locations is discouraged in the current public health emergency, something government counsel experienced retrieving a college student on lightly traveled highways with dramatic changes instituted to protect the public.

6. Contrary to the defendant's assertion, he is a danger to the public. His PSR details a mental health history that is of concern. This Court imposed a sentence of one-year and a day of incarceration after a lengthy hearing examining the facts of these offenses. He is guilty of purchasing a firearm for another member of a hate group and for possessing firearms while addicted to narcotics, facts he admitted his guilt to before the Court.

**BACKGROUND AND PROCEDURAL HISTORY**

7. In the Statement of Facts filed in this case, the defendant admitted that, on October 18, 2017, he purchased an Arsenal SAM7R, 7.62x39 caliber, semi-automatic rifle. In purchasing this firearm, the defendant completed paperwork required by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), specifically an ATF Form 4473. On the ATF Form 4473, the

---

[1] Government counsel was not consulted prior to the instant motion being filed. Government counsel only learned of it when prior counsel forwarded it tonight from the Antitrust Division of the Department of Justice.

defendant knowingly lied when he indicated that he was the actual buyer of the firearm. In fact, as the defendant well knew, the firearm was never intended for the defendant, and he was purchasing the firearm for another person. Shortly after picking up the firearm, within a few days or weeks the defendant transferred it to another individual with common interests in hate speech.

8. Just as dangerous, the defendant has admitted to knowingly and unlawfully possessing at least four firearms between November 2018 and March 2019. At that time, the defendant was an unlawful user of or addicted to a variety of controlled substances, including marijuana, Modafinil, psilocybin mushrooms, and opium.

9. When the defendant was arrested on September 19, 2019, law enforcement recovered several firearms, including rifles and pistols, from the defendant's bedroom and adjoining room—including three firearms from next to the defendant's bed, two more from his bedroom closet, another in a desk in his adjoining room, and another under that desk. In addition, law enforcement recovered, from just the defendant's bedroom and adjoining room, forty-seven separate magazines for various firearms, the vast majority of which had ammunition. Law enforcement also recovered a Glock 23, .40 caliber pistol, with a loaded magazine inside, from the glove box of the defendant's vehicle. Two more magazines were in the center console, another two in the passenger door, and yet another in trunk of the vehicle. The locations of the firearms are noteworthy given that the home where the defendant resided had a basement vault where many firearms were stored. It is striking these weapons were kept next to his bed, in his closet, in a desk drawer, under a desk, and in his car, rather than stored in a vault.

10. The defendant's criminal history also counsels strongly against any modification of the sentence imposed in this case. On May 30, 2013, the defendant pleaded guilty to a dangerous firearms offense as a juvenile. The conviction stemmed from a February 10, 2013 incident in which the defendant met three other individuals with the plan to sell them marijuana. When the individuals took the marijuana and drove off without paying, the defendant pulled out a handgun

and fired a shot at the vehicle. Given that this defendant's criminal history includes an incident in which the defendant used a firearm in an attempted violent crime, together with the instant criminal offenses, the modification is not appropriate.

11. Also reflected in the Statement of Facts, between November 2018 and March 2019, the defendant was an unlawful user of or addicted to a number of controlled substances, including marijuana, Modafinil, psilocybin mushrooms, and opium.[2] During that time-period, the defendant possessed a variety of firearms, including four specifically set out in the Statement of Facts.[3] In his post-arrest interview, the defendant admitted that, until the time of his arrest, he generally carried a firearm on him. The combination of unlawful controlled substances and firearms presents a serious danger to the community. *See United States v. Carter*, 750 F.3d 462, 470 (4th Cir. 2014) (concluding that "empirical evidence and common sense support the government's contention that drug use, including marijuana use, frequently coincides with violence"). The fact that the defendant himself was involved in an attempted drug transaction in which he shot at an occupied vehicle illustrates precisely why the combination of firearms and drugs is so dangerous.

12. This defendant has also pleaded guilty to lying in order to straw purchase a firearm for another person on October 18, 2017. To make matters worse, based on the defendant's text message communications with that person, the defendant knew that person was also a regular

---

[2] The defendant has also admitted to law enforcement that he regularly used LSD in the past, though he claims he had not used LSD during the November 2018 to March 2019 time period covered by the Criminal Information.

[3] In fact, the defendant possessed more firearms than just those outlined in the Statement of Facts. Specifically, on March 24, 2019, according to the defendant's text message communications, the defendant traveled to Richmond, VA and traded a Saiga rifle for another weapon. Further, it is possible the defendant possessed additional firearms during this time period, but law enforcement has been unable to identify the date of purchase or first possession for several of the firearms recovered from the defendant's bedroom and adjoining room or vehicle.

controlled substance user. In fact, the text messages demonstrate that the defendant was, on at least some occasions, a supplier of controlled substances to this person.

13. This Court spent considerable time at sentencing discussing with the defendant his associations with a number of violent white supremacist organizations, including Vanguard America and Atomwaffen Division. Specifically, the defendant was associated with Vanguard America in 2017. According to the Anti-Defamation League, "Vanguard America (VA) is a white supremacist group that opposes multiculturalism and believes that America should be an exclusively white nation." "Vanguard America," ADL.ORG, https://www.adl.org/resources/-backgrounders/vanguard-america (last visited February 16, 2020). The defendant eventually ceased his association with Vanguard America and became associated with Atomwaffen Division. According to the Anti-Defamation League, Atomwaffen Division "is a small neo-Nazi group whose members are preparing for a race war to combat what they consider the cultural and racial displacement of the white race." "Atomwaffen Division (AWD)," ADL.ORG, https://www.adl.org/resources/backgrounders/atomwaffen-division-awd (last visited February 16, 2020). During his time associated with Atomwaffen Division in 2018, the defendant served as the Virginia cell leader and a recruiter.[4]

14. While the defendant has a constitutional right to his own viewpoints and associations, these associations, when viewed in light of the defendant's criminal conduct, are alarming. In particular, the defendant's association with Atomwaffen Division is especially

---

[4] While the defendant, when specifically questioned by this Court whether he regretted his past associations with white supremacist organizations, renounced the hate groups in court, that was not the case on the day the defendant was arrested. The defendant informed law enforcement that only one day before he was arrested, he had submitted an application to join Patriot Front. Patriot Front is "a white supremacist group whose members maintain that their ancestors conquered America and bequeathed it to them alone. They define themselves as American fascists or American nationalists who are focused on preserving America's identity as a European-American identity." "Patriot Front," ADL.ORG, https://www.adl.org/resources/backgrounders/patriot-front (last visited February 16, 2020).

troubling because of the group's accelerationist philosophy and history of violence. Atomwaffen Division "[m]embers train in preparation for an impending race war and promote the use of violence to reach their goal of 'uncompromising victory.' In a promotional video published on January 21, 2018, members, dressed in military-styled camouflaged fatigues, shout 'gas the K****' and 'race war now' as they fire weapons and practice tactical maneuvers." "Atomwaffen Division (AWD)," ADL.ORG, https://www.adl.org/resources/backgrounders/atomwaffen-division-awd.

## CONCLUSION

For the reasons stated, the United States asks this Court to deny the instant request to modify the sentence imposed in this case subject to refiling if the conditions at FCI Cumberland change, which there is no reason to believe will occur on the record before this Court today. The defendant's attachment, from a doctor who has never examined the defendant and who repeatedly writes in the plural "we believe" is of little value. Whatever the defendant's condition, he is safer from COVID-19 where he is today.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:  _____/s/_____
Ronald L. Walutes, Jr.
Assistant United States Attorney
VA Bar 26312
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax:   (703) 299-3868
Ron.walutes@usdoj.gov

7

CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2020, I caused a copy of the foregoing memorandum to be filed with the Clerk of Court using the CM/ECF system, which will automatically generate a Notice of Electronic Filing (NEF) to all counsel of record.

                                                      /s/
                                            Ronald L. Walutes, Jr.
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax:    (703) 299-3868
Ron.walutes@usdoj.gov